```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MENOTTI ARISTONE,<br><br>        Plaintiff,<br><br>   v.<br><br>NEW JERSEY CARPENTER'S PENSION FUND (PLAN NO. 001),<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action No.<br>15-5709 (JBS/KMW)<br><br><br>**OPINION** |

APPEARANCES:

Thomas Joseph Hagner, Esq.
HAGNER & ZOHLMAN, LLC
57 Kresson Road
Cherry Hill, NJ 08034
    Counsel for Plaintiff

Seth Ptasiewicz, Esq.
KROLL, HEINEMAN CARTON, LLC
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, NJ 08830
    Counsel for Defendant

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

In this ERISA action, 29 U.S.C. § 1001, <u>et</u> <u>seq.</u>, to redress the allegedly wrongful denial of disability retirement benefits, Plaintiff Menotti Aristone (hereinafter, "Plaintiff"), challenges Defendant New Jersey Carpenter's Pension Fund's (hereinafter, "Defendant," the "Fund," or the "Pension Fund") determination that he was ineligible for disability benefits

because he failed to accrue 130 pension credits in the sixty consecutive months prior to his "date of disablement" (as determined by the Fund).  Plaintiff claims, in particular, that the Fund premised its denial upon an erroneous interpretation of the Plan's nondiscretionary eligibility provisions, and incorrectly based his "date of disablement" upon the disability date listed on his "Social Security Award letter."

Following limited discovery, the parties now cross-move for summary judgment on the issue of Plaintiff's entitlement to disability benefits [see Docket Items 11 & 12], but agree that the disposition of this litigation turns, in essence, upon a dispute over the appropriate interpretation of the Benefit Plan's eligibility provisions.  (See generally Def.'s Br. at 1-3; Pl.'s Br. at 5-7.)  More specifically, both parties point to the following Plan and Summary Plan language concerning benefits eligibility:

> [*Plan*]
> **ARTICLE IV – ELIGIBILITY FOR DISABILITY BENEFIT[S]**: An employee who becomes **totally and permanently disabled** shall be retired on a disability pension as set forth in this Article provided that, on the date of becoming totally and permanently disabled, [the employee] has at least [130] Pension Credits in the [60] consecutive months immediately preceding [the employee's] **date of disablement**[.]
> [*Summary Plan*]
> **Eligibility –** If you become **totally and permanently disabled** and have earned 130 Units of pension credit in the last 60 consecutive months immediately preceding the date you became **disabled**, you may apply for a disability pension.

2

(Exs. A & B to Cooney Aff. (emphases added).)  The parties then quarrel over whether the "date of disablement" or "disabled" date should be construed synonymously with the date of "total[] and permanent[]" disability (the interpretation advanced by the Fund in its denial of benefits and on summary judgment), or whether the "date of disablement" or "disabled" date should be viewed as necessarily earlier-in-time than the date of "total[] and permanent[]" disability (the competing interpretation advanced by Plaintiff in this litigation).  In other words, the parties debate whether the eligibility criteria casts a spectrum for the concept of a qualifying "disability," or instead imbeds the notion of "total[] and permanent[]" disability within the larger and more general rubric of "disability."

The parties, however, assert diametrically opposed positions on how best to resolve that interpretive dispute. Defendant, on the one hand, takes the position [1] that the Plan grants the Fund (and its Board) discretion in interpreting the plan documents and determining eligibility, [2] that the nature of this discretion triggers a deferential reasonableness review of the eligibility determination, and [3] that the Fund's interpretation, viewed through the prism of the deferential standard, plainly comports with the language of the Plan terms. (See Def.'s Br. at 12-32; Def.'s Opp'n at 15-27; Def.'s Reply at

3

4-14.)  Plaintiff argues, by contrast, [1] that the Plan confers no discretionary authority, [2] that the Fund's interpretation must be reviewed *de novo*, and [3] that the Fund interpreted the Plan in a way that altered its plain language, by failing to draw the essential "distinction" between the terms "totally and permanently disabled" and "disabled."  (Pl.'s Br. at 11-17; see also Pl.'s Opp'n at 5-16.)

Against that backdrop, in resolving the parties' summary judgment motions, the Court must address two related inquiries.  First, the Court must determine the standard of review applicable to the Fund's eligibility determination—and specifically, whether the Plan confers discretion in its interpretation (triggering essentially a reasonableness review), or mandates strict adherence to its plain terms (requiring *de novo* review).  Second, the Court must, in accordance with the relevant standard of review, determine whether the undisputed factual record creates a trial issue concerning the reasonableness of Fund's construction of the Plan provisions.

For the reasons that follow, Defendant's motion for summary judgment will be granted, and Plaintiff's cross-motion for summary judgment will be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. New Jersey Carpenters Pension Fund and Plan Documents

The Pension Fund, established on July 3, 1958, constitutes a multi-employer defined benefit pension plan within the meaning of ERISA, 29 U.S.C. §§ 1301(a)(3), 1132(d)(1), and 1451(a)(1),

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), and/or recite factual irrelevancies. See generally L. Civ. R. 56.1(a); see also Kemly v. Werner Co., ___ F. Supp. 3d ____, 2015 WL 8335030 (D.N.J. Dec. 8, 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., ___ F. Supp. 3d ____, 2015 WL 8361745 (D.N.J. Dec. 8, 2015) (same). For that reason, the Court disregards, as it must, the argument that Plaintiff "became disabled in or around April 2012." (Pl.'s SMF at ¶ 5.) Critically, Plaintiff's newly-minted position on an earlier disability date—April 2012, rather than June 10, 2013—rests solely upon attorney argument in the pending briefing, and finds no footing in the Social Security record, nor in any other evidence (medical or otherwise) offered on summary judgment. Indeed, in claiming that he "became disabled in or around April 2012," Plaintiff points to no evidence (genuine or otherwise) to buttress his position. (See Pl.'s SMF at ¶ 5 (alleging, without any accompanying citation, that Plaintiff "became disabled in or around April 2010").) Aside from that fatal deficiency, in reviewing an ERISA benefits denial, the Court must look only to the evidence put before the Trustees at the time of their eligibility determination. See, e.g., Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997) (explaining that, "[u]nder the arbitrary and capricious standard of review," the relevant record "consists of [only] that evidence that was before the administrator when he made the decision being reviewed"), abrogated on other grounds by, Metro Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); Marciniak v. Prudential Fin. Ins. Co. of Am., 184 F. App'x 266, 299 (3d Cir. 2006) (citing and relying upon Mitchell for the same proposition).

5

and provides pension, disability, and death benefits for carpenters and millworkers represented by the New Jersey Regional Council of Carpenters (or an affiliated union) throughout the State of New Jersey.  (See Def.'s SMF at ¶¶ 1, 3; Pl.'s RSMF at ¶¶ 1, 3; Pl.'s SMF at ¶ 2; Def.'s RSMF at ¶ 2; Exs. A & B to Cooney Aff.; Exs. A & B to Hagner Dec.)

More specifically, the Fund "automatically" enrolls covered employees who have "worked at least 1,000 hours," funds pension benefits through employer contributions, and uses "pension credits" to determine "eligibility for benefits and the amount of [those] benefits."[2]  (Ex. A to Hagner Dec. at 3; see also Ex. A to Cooney Aff. at 3; Def.'s SMF at ¶ 5; Pl.'s RSMF at ¶ 5.)  With respect to the disability benefits at issue here, the Plan explains:

> An employee who becomes **totally and permanently disabled** shall be retired on a disability pension as set forth in this Article provided that, on the date of becoming totally and permanently disabled, [the employee] has at least [130] Pension Credits in the [60] consecutive months immediately preceding [the employee's] **date of disablement**[.]

---

[2] The Fund calculates the "pension credits" based upon the time period of the participant's service. (Ex. A to Hagner Dec. at 4-5.)  For example, between January 1, 2003 and December 31, 2010, a participant received "1/10 of a pension credit for every $9.00 of employer contributions" credited to the Pension Fund on behalf of the participant.  (Id. at 4.)  For work after January 1, 2011, by contrast, a participant received (or, receives for ongoing service) "1/10 of a pension credit for every $10.00 of employer contributions" credited to the Pension Fund on behalf of the participant.  (Id. at 5.)

6

(Ex. A to Cooney Aff.)  The Plan goes on to detail that "totally and permanently disabled" means that [1] the "total disability shall have continued for five consecutive months;" [2] the individual "is currently receiving Federal Social Security disability pension payments;" and [3] "the totality and permanence of the disability is established <u>to the **satisfaction** of the Trustees</u>."[3]  (<u>Id.</u> (emphasis added).)  In other words, in order to be eligible for disability benefits, the applicant must have accrued 130 pension credits in the five years prior to his or her disability, must be receiving Social Security benefits on account on the disability, and must provide the Fund (and specifically its Trustees) with satisfactory proofs on the severity of the disability.  (<u>See</u> <u>generally</u> <u>id.</u>)

---

[3] The Summary Plan Description then reiterates the disability benefits eligibility by explaining that,

> If you become **totally and permanently disabled** and have earned 130 Units of pension credit in the last 60 consecutive months immediately preceding the date you became **disabled**, you may apply for a disability pension.
>
> You will be considered to be totally and permanently disabled if:
> (1) Total disability has continued for 5 consecutive months;
> (2) You are receiving Federal Social Security Disability pension payments, and
> (3) The permanency of the disability is established to the satisfaction of the Trustee by medical proof or medical examination as directed by the Trustees.

(Ex. A to Cooney Aff. (emphasis added).)

7

In terms of applying these (among other) provisions, the Plan then explains that the "Trustees of the Pension Fund" serve as

> [t]he named fiduciar[ies] who <u>shall control and manage the operation and administration of the Plan</u>, or designate an administrative manager for such purposes. The Trustees <u>shall establish rules, make determinations and interpret and decide all matters arising in connection with such administration</u>. [In addition,] [t]he administrative manager shall have the full authority to interpret the provisions of the Plan document and to make benefit determinations based thereon.

(Ex. B to Cooney Aff. (emphases added).) In other words, the "Trustees are responsible for the administration of the Pension Fund in accordance with the Plan" (Ex. A to Cooney Aff.), and they (and the Administrative Manager of the Fund) have ultimate supervisory authority over the interpretation of Plan provisions <u>and</u> benefit eligibility determinations, among other things. (<u>See</u> Ex. B to Cooney Aff.)

### B. Plaintiff's Application for Disability Retirement Benefits

In July 2014, Plaintiff submitted a claim for disability retirement benefits to the Fund's Retirement Benefits Manager, Phil Cooney, and subsequently provided Mr. Cooney (as required by the Plan) with his Disability Award Letter from the Social Security Administration. (<u>See</u> Exs. C & D to Cooney Aff.) The Disability Award Letter, in turn, found Plaintiff disabled (and entitled to federal disability benefits) as of June 10, 2013,

because his various severe impairments[4] precluded him from maintaining employment.  (See Exs. C & D to Cooney Aff.)

Despite this favorable finding, on August 11, 2014, the Fund found Plaintiff ineligible for disability pension benefits because, in the "60 months" prior to his "Social Security Date of Disablement of June 10, 2013," he earned only "103.3 pension credit units," not the "130 pension credits" required for a disability pension.[5]  (Ex. E to Cooney Aff.)  In other words, the Fund tethered its own eligibility inquiry to the "disability" finding of the Social Security Administration.  (See generally id.)

Following this initial declination, on August 22, 2014, Plaintiff appealed the initial decision to the full Board of Trustees for the Fund, and resubmitted his favorable award from the Social Security Administration (which, again, found Plaintiff disabled as of June 10, 2013).  (Exs. G & H to Cooney Aff.; Pl.'s SMF at ¶ 14; Def.'s RSMF at ¶ 14.)  Nevertheless, on September 14, 2014, the Administrative Manager of the Fund,

---

[4] In awarding disability benefits, the Social Security Administration found that Plaintiff suffered from the following severe impairments: coronary artery disease, status post myocardial infarction with right coronary artery, stenting chronic pain syndrome, degenerative disc disease, depression, and a history of substance abuse.  (See Ex. D to Cooney Aff.)
[5] Plaintiff mounts no challenge to the Fund's calculation of his pension credits for this period, and takes issue instead only with the Fund's interpretation of the eligibility provisions, as explained below.

George F. Laufenberg, informed Plaintiff that the full Board of Trustees "denied" his appeal for failure to meet the eligibility requirements.  (See Ex. I to Cooney Aff.; see also Def.'s SMF at ¶ 17; Pl.'s RSMF at ¶ 17.)  More specifically, Mr. Laufenberg reiterated the earlier finding that Plaintiff failed to earn "130 pension credits in the 60 months" prior to the date of disablement listed on his Social Security Award Letter (i.e., June 10, 2013).  (Ex. I to Cooney Aff.)

In the aftermath of these adverse disability benefit determinations, Plaintiff brought this denial of benefits challenge under 29 U.S.C. § 1132(a)(1)(B), and the pending summary judgment motions follow.  [See Docket Items 11 & 12.]

### III. STANDARD OF REVIEW APPLICABLE TO DEFENDANTS' SUMMARY JUDGMENT MOTION

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also Fed. R. Civ. P. 56(a).  Stated differently, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

10

In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor. See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014). An inference based upon "'speculation or conjecture,'" however, "'does not create a material factual dispute sufficient to defeat summary judgment.'" Halsey, 750 F.3d at 287 (citations omitted). Rather, the non-moving party must support each essential element with concrete record evidence. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Moreover, "[t]he standard by which the court decides a summary judgment motion does not change when the parties file cross-motions," as here. United States v. Kramer, 644 F. Supp. 2d 479, 488 (D.N.J. 2008). In other words, "the court must consider the motions independently and view the evidence on each motion in the light most favorable to the party opposing the motion." Id. (citation omitted); see also Baxter Healthcare Corp. v. HQ Specialty Pharma Corp., 133 F. Supp. 3d 692, 697–98 (D.N.J. 2015) (describing and applying the same analytical framework to cross-motions for summary judgment).

**IV. DISCUSSION**

The pending motions present, as explained above, two primary issues: the standard of review applicable to the Fund's

11

eligibility determinations, and whether the undisputed factual record demonstrates, in light of the relevant standard of review, support in the Plan language for the benefits denial. The Court will address each aspect of the parties' summary judgment motions in turn.

### A. The Discretionary Fund Provisions Trigger Deferential Review of the Fund's Denial of Plaintiff's Claim for a Disability Retirement Pension

Under 29 U.S.C. § 1132(a)(1)(B), a participant in an ERISA benefit plan denied benefits by the plan's administrator may sue in federal court "'to recover benefits due to him under the terms of his plan.'" Howley v. Mellon Fin. Corp., 625 F.3d 788, 792 (3d Cir. 2010) (citation omitted). Ordinarily, a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) must "'be reviewed under a *de novo* standard unless the benefit plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" Id. (emphasis added) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). In the case of such discretion, the denial must be reviewed "only for abuse of that discretion," and must be affirmed unless the denial was "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Id. (quoting Abnathya v. Hoffmann—La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).

12

The parties disagree over whether the Plan grants the Trustees discretionary authority to determine eligibility for benefits or to construe the terms of the plan. (See, e.g., Def.'s Br. at 17-20; Pl.'s Br. at 12-13.) In resolving that question, the Court notes that, the scope of the Trustees' authority "'depends upon the terms of the plan,'" and "no 'magic words'" predetermine the scope of judicial review. Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (citation omitted). Rather, "discretionary powers may be granted expressly or implicitly," but must, at a minimum, "'communicate the idea that the administrator ... has broad-ranging authority to assess compliance with pre-existing criteria'" and "'to interpret the rules, to implement the rules, and even to change them entirely.'" Id. at 413, 417 (citations omitted).

In applying these tenets here, it is apparent that the provisions of the Pension Fund squarely match the language deemed indicative of discretionary authority. Indeed, in Article XII, or the "**ADMINISTRATION**" provisions, the Pension Plan explains, in clear language, that the Trustees "**shall control and manage the operation and administration of the Plan**," and "**shall establish rules, make determinations and interpret and decide all matters arising in connection with such administration**." (Ex. A to Cooney Aff. (emphasis in original).)

13

In other words, the Pension Plan communicates, in that provision alone, that the Trustees have discretionary authority to [1] establish rules, [2] interpret Plan provisions, [3] make eligibility determinations, and [4] otherwise control, manage, and administer <u>all</u> aspects of the Pension Plan.  (<u>See</u> <u>generally</u> Exs. A to Cooney Aff.)  In that way, that provision proves sufficient, by itself, to make a compelling case for discretionary authority.  <u>See</u> <u>Viera</u>, 642 F.3d at 413, 417 (citations omitted) (explaining that, in order to confer discretionary authority, a pension plan must "'communicate the idea that the administrator ... has broad-ranging authority to assess compliance with pre-existing criteria'" and "'to interpret the rules, to implement the rules, and even to change them entirely'").

Aside from that provision, though, various other sections of the Plan offer additional and ample indications of discretionary authority.  The eligibility provisions, for example, specifically reinforce the discretionary narrative, by stating that the "totality and permanence of the [claimed] disability" must be "established to the **satisfaction** of the Trustees" through medical proof or examination, and explaining that the Trustees' ultimate disability determination "shall be final and binding on the Employee."  (Ex. A to Cooney Aff.)  In other words, the Trustees have autonomy (or, discretion) to

14

determine whether an individual produced sufficient evidence (in whatever form) of a qualifying disability. (See id.) The Summary Plan Description and the Fund's Declaration of Trust[6] then completes the interpretive picture, by reiterating the Trustees' overall "responsibil[ity] for the Operation [and interpretation] of the [Pension] Plan" (Ex. B to Cooney Aff. at 2-3), and explaining that the Pension Plan delegates "authority or discretionary control or responsibility" to the Trustees concerning the "management of the benefit plan" and the "disposition of the fund assets." (Ex. A to Laufenberg Aff.)

In that way, and taken together, the provisions of the Pension Plan (and its supporting documents) unquestionably communicate the concept of the Trustees' far-reaching discretionary authority.[7] See D'Annuzio v. United of Omaha Life Ins. Co., No. 11-7576, 2013 WL 3964796, at *5 (D.N.J. July 30,

---

[6] In considering whether the Plan provides the Trustees with discretionary authority, the Court need not confine its inquiry to the Plan itself, and may resort to the Fund's Declaration of Trust, among other documents. See Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1180-81 (3d Cir. 1991) (explaining the same proposition).

[7] Although Plaintiff argues that the Plan only confers discretionary authority upon the Administrative Manager, the language of the Pension Plan itself speaks, almost exclusively, in terms of the Trustees' authority. Indeed, the provisions of the Plan make plain that "the full authority" of the administrative manager "to interpret the provisions of the Plan and to make benefit determinations" derives exclusively from the Trustees' overarching authority and obligation to perform these functions. (Ex. A to Cooney Aff.)

2013) (citation omitted) (finding a plan discretionary where it granted the trustees, as here, "'the discretion and final authority to construe and interpret the policy,' including the 'authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits'"). Indeed, the Court can scarcely imagine a broader delegation of interpretive authority, and must review the Trustees' benefits determination of Plaintiff's claim under the deferential arbitrary and capricious (or, reasonableness) standard.

> **B. In Denying Plaintiffs' Claim for Disability Retirement Benefits, the Fund Reasonably Interpreted the Plan Provisions and Reached a Well-Supported Decision Consistent with the Plan Language**

Under the arbitrary and capricious standard, a court must uphold the plan administrator or fiduciary's decision to deny benefits, unless the entity made the decision "'without reason,' without support by 'substantial evidence,'" or otherwise erred "'as a matter of law.'" Howley, 625 F.3d at 792 (citation omitted). In other words, the scope of review is "narrow," and a court may not "'substitute its judgment for that of the plan administrator or fiduciary in determining eligibility for plan benefits.'" Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009) (citation and internal quotation marks omitted). Indeed, a decision may be disturbed only if it was

16

unreasonable.[8] See, e.g., Dewitt v. Penn—Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997) (detailing the relevant standard). In applying this rubric in the context of cross-motions for summary judgment, as here, this Court must determine whether the record creates a triable issue on the reasonableness of the interpretation (and ultimate benefits denial). See D'Annunzio, 2013 WL 3964796, at *6 (explaining the relevant inquiry on summary judgment). In this case, however, the inquiry proves relatively uncomplicated, because, in denying Plaintiff's benefits claim, the Trustees evenly and rationally applied the plain language of the Plan.

In order to be eligible for retirement benefits, Plaintiff must, as explained above, have "become totally and permanently disabled," and must have accrued "at least [130] Pension Credits in the [60] consecutive months immediately preceding [the

---

[8] In determining whether the Trustees reasonably interpreted the Plan provisions, some courts consider the following factors: [1] whether the trustees reached an interpretation consistent with the goals expressed in the plan documents; [2] whether the interpretation renders any language in the plan meaningless or internally inconsistent; [3] whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute; [4] whether the trustees interpreted the provision at issue consistently; and [5] whether the interpretation contradicts the otherwise clear plan language. See Howley, 625 F.3d at 795 (citation omitted). In this case, the parties (and especially Plaintiff) give little to no attention to these factors, and they have, in any event, little relevance here given the narrowness of the parties' interpretive dispute.

17

employee's] **date of disablement**."  (Ex. A to Cooney Aff. (emphasis added).)  In applying this provision to Plaintiff's claim, the Trustees relied upon the only disability date identified by Plaintiff in his claim—June 10, 2013 (i.e., the disability date of his Social Security Award letter)—and then backtracked from that date to determine whether Plaintiff accrued the necessary pension credits.[9]  The Fund, however, found Plaintiff ineligible for benefits, because he earned only "103.3 pension credit units" during this period, not the "130 pension credits" required for a disability pension. (Ex. E to Cooney

---

[9] Plaintiff makes much of the alleged "distinction" in the eligibility criteria between the "date of disablement" and the "date of becoming totally and permanently disabled." Nevertheless, a simple inspection of the relevant provision makes plain that the concepts must be viewed interchangeably. Indeed, the eligibility criteria states, on its face, that "[a]n employee ... shall be retired on a disability pension ... provided that, on the date of becoming totally and permanently disabled, he has at least [130] Pension Credits in the sixty consecutive months immediately preceding his date of disablement." (Ex. A to Cooney Aff. (emphasis added).)  In other words, the structure, syntax, and placement of the language reflects that the triggering date for the eligibility inquiry is the "date of disablement" a/k/a the "date of becoming totally and permanently disabled." (Id.)  Nevertheless, Plaintiff points to the varied disability terminology, and claims that the provision necessarily recognizes that the "'date of disablement'" differs from the "'date of becoming totally and permanently disabled.'" (Pl.'s Opp'n at 9-10.)  Plaintiff's position, however, rests upon an overly narrow parsing of otherwise clear language, and ignores, in any event, that he produced no evidence of a disability date other than June 10, 2013.  In other words, even if the Court credited Plaintiff's interpretation (which it does not), the Fund still reached a reasonable conclusion, because it relied upon the only disability date proffered by Plaintiff.

18

Aff.)  Plaintiff does not challenge his credit accrual for this period, nor has he identified any other factual issue on the overall reasonableness of the Fund's ultimate benefits denial.[10]

In view of these circumstances, the Court finds no genuine dispute that the Fund reached a reasonable and substantially supported decision to deny Plaintiff a Disability Retirement Pension.  Stated differently, because the factual record demonstrates no triable issue concerning whether the Fund's denial was arbitrary or capricious, it must be affirmed.  See Miller v. Am. Airlines, Inc., 632 F.3d 837, 844–455 (3d Cir. 2011) (citations omitted) (explaining that a benefits denial must be affirmed, even on summary judgment, unless it was arbitrary and capricious).

## V. CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment [see Docket Item 11] will be granted, and Plaintiff's cross-motion for summary judgment will be denied. [See Docket Item 12.]  An accompanying Order will be entered.

|  |  |
|---|---|
| **August 11, 2016** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
|  | Chief U.S. District Judge |

---

[10] Rather, he raises primarily, if not exclusively, legal challenges to the Fund's interpretation of the Plan. Nevertheless, for the reasons expressed herein, the Court finds that these interpretive challenges miss the mark.

19